**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
MICKY FONG,

                       Plaintiff,

          - against -

LAWRENCE SEARS,

                    Defendant.
--------------------------------------------------------X

                  **MEMORANDUM**
                  **AND ORDER**

                  06-CV-5597 (CBA) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      Petitioner Micky Fong ("Fong") seeks a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. He was convicted in New York Supreme Court, Queens County, of promoting

prostitution in the third degree in violation of Section 230.25[1] of the New York Penal Law.

Docket Entry ("DE") 1 ("Petition"). Fong's sole claim is that he was denied his Sixth

Amendment right to the effective assistance of counsel. Although Fong does not specify the

basis of that claim in the papers submitted with his petition, it appears that he seeks to litigate in

this court the similar claim he made to the courts of New York. As part of the state court

proceedings, Fong criticized his trial counsel for four perceived lapses. First, he complained that

his counsel failed to move for dismissal of the charges at the close of the testimony on the ground

that the evidence was insufficient to support a conviction. Second, Fong asserted his counsel

should have moved to vacate the jury's verdict as against the weight of the evidence. Third, he

faulted his counsel for failing to argue in his summation that the evidence was insufficient.

Finally, he contended that his counsel failed to make appropriate requests with respect to the jury

charge. The Honorable Carol B. Amon, United States District Judge, has referred the matter to

me for a report and recommendation. I now make my report and, for the reasons set forth below,

respectfully recommend that the court deny Fong's petition.

## I.    Background

### A.    Fong's Arrest

On October 9, 2002, Detective James Murray ("Murray") of the Queens Vice Squad of the New York City Police Department, working undercover, arrived at 41-22 College Point Boulevard in Flushing, Queens along with his arrest team.  DE 12 (Transcript of Jury Trial dated Jan. 27-29, 2003) ("TT") 239, 253-54.  Murray approached the front door, rang a bell, and was buzzed in to a foyer between the front door and a metal gate.  Fong came to the gate and inquired whether Murray had an appointment.  Murray answered in the affirmative.  Fong then opened the gate and allowed Murray to enter the building.  Murray inquired of Fong whether he had any girls and Fong replied that he did.  Murray inquired how much it would cost to have sex with the girls and Fong replied that the price would be $150.  Fong and Murray walked up a flight of stairs to a living room.  Adjacent to the living room was a hallway down which were two rooms.  Also in the living room was a television monitor showing a closed-circuit feed of the front entryway of the building.  Fong brought Murray a beer and Murray asked him where the girls were.  Fong responded "five minutes."  TT 257.  Murray drank the beer while Fong spoke on the phone. Murray went into the bathroom to call his arrest team and tell them to wait an extra ten minutes before entering the building to make an arrest.  When Murray came out of the bathroom, he saw two women wearing lingerie.  Murray walked towards the living room but Fong pointed him in the direction of the woman, saying "No.  No.  Go."  TT 259.  Murray asked the women if the price was $150 for sex, and both responded in the affirmative.  *See generally* TT 245-59.

Murray chose one of the women, Xing Lee ("Lee").  Lee took Murray to a bedroom adjacent to the living room and told him that he needed to pay fifty dollars "for the house."  TT

260. Murray gave her a $100 bill which had previously been photocopied in order to make a record of the serial number. Lee left the room and Murray, after beginning to undress, opened the door to observe where she had gone. He observed her giving the bill to Fong. Lee returned to the room and began undressing. She told Murray that he had to give her $100, as the $50 was for the house and $100 was for her.[1]

At that point, Murray's arrest team sought to enter the building but were stopped by the metal gate. As the officers banged on the gate and tried to pry it open, Fong walked down to the gate and told them they could not enter. TT 261-62, 357-58. Murray went downstairs in his underwear and let the officers in. Fong stood at the top of the stairs telling Murray that he was "bad, very bad." TT 262. The arrest team ran up the stairs and arrested Fong and the two women. Detective Antonsen ("Antonsen"), a member of the team, searched the bedroom where Murray and the woman had been and found three condoms on a table. Antonsen searched Fong and recovered some $920 in cash, including the $100 bill that Murray had given him. He also recovered the camera and monitor from the premises. TT 360-63, 369-70.

B.    Trial Court Proceedings

Fong was charged with promoting prostitution in the third degree, a crime that a person commits when he knowingly "[a]dvances or profits from prostitution by managing, supervising, controlling or owning, either alone or in association with others, a house of prostitution or a prostitution business or enterprise involving prostitution activity by two or more prostitutes[.]"

---

[1] Murray testified that he had already paid $100 to the house; his testimony does not reveal whether he discussed the apparent overcharge of $50 with Lee.

N.Y. Penal Law § 230.25[1].[2]  Fong's counsel, Thomas Sheehan ("Sheehan"), made several

motions before trial to prevent the government from introducing evidence of Fong's prior

prostitution-related convictions.[3]  Sheehan successfully argued that the evidence should not be

admitted to prove lack of mistake under *People v. Molineux*, 168 N.Y. 264 (1901), because –

based on the testimony the government was planning to offer, that Fong stated a price to Murray

for sex with one of the two women – he did not intend to present a defense based on mistake.

DE 9 (Transcript of *Sandoval* Hearing dated Jan. 23, 2003) ("HT") 8-9.  Sheehan also argued,

pursuant to *People v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974) that, should Fong testify, the

prosecution should be prevented from asking about Fong's six prior convictions for the same and

similar offenses because this evidence would be prejudicial because of the similarity of the

offenses.  HT 9-10.  The court accepted this argument and ruled that for all six offenses, save

one, the prosecution could ask Fong if he had been convicted of a felony but could not mention

the specific felony offense.  HT 10, 15-16.  The court stated it would allow the prosecution to ask

about the details of one of Fong's multiple prior offenses because, "when somebody specializes

we can't shield completely."  HT 16.

When the trial began on January 27, 2003, the People presented testimony from Murray

and Antonsen.  TT 239-336, 342-395.  Sheehan cross-examined each.  He elicited an admission

---

[2]  The charge as read to the jury included only the terms "managing, supervising, or controlling"
as there was no evidence that Fong owned the prostitution enterprise.  TT 455, 457.

[3]  Fong's encounters with the criminal justice system as a result of his alleged involvement in a
prostitution business have previously resulted in litigation before this court.  *See Fong v. City of
New York, et al.*, No. 98-CV-06931 (DEW) (RML), Complaint (E.D.N.Y. Nov. 6, 1998); *Fong v.
City of New York, et al.*, No. 02-CV-3690 (CPS) (MDG), Complaint (E.D.N.Y. June 24, 2002).
Fong retained Sheehan to represent him in both cases, and both cases were settled before trial.

from Murray that his testimony attributing certain statements to Fong, Lee, and the other woman had in each case been a "synopsis" rather than a verbatim report. TT 332-33. Sheehan also pressed each witness on his recollection of the relevant events. Sheehan elicited Murray's admission that he did not remember such details as the weather on the day of the arrest, the color of the walls at the site of the arrest, or the clothing worn by Fong and the two women; perhaps more substantively, he also pressed Murray to admit that the detective did not recall whether he saw Fong place in his pocket the money that Murray had paid. TT 273-74, 280, 312. Sheehan elicited similar gaps in Antonsen's recollection. TT 376-77, 387-89. Fong did not present any evidence at trial.[4]

Upon the close of the evidence, Sheehan made a motion to dismiss "for lack of sufficient evidence of a particularity," arguing that the jury could not properly rely on what Murray had admitted was a synopsis of his conversations with Lee and Fong. TT 397-98. The court denied the motion, finding there was "sufficient evidence to submit it to the triers of the fact." TT 400.

The jury found Fong guilty of promoting prostitution in the third degree. TT 473. Fong was sentenced on February 20, 2003. Sheehan spoke on his client's behalf, attempting to "paint a fuller picture of Mr. Fong." DE 11 (transcript of plea and sentencing) ("ST") 5. He discussed Fong's language difficulties, his age and poor health, his lack of means, his appreciation for art and his interest in politics, his family circumstances, and his cooperation with the District Attorney's office on investigations of crimes committed against Fong. ST 5-8, 12. The court

---

[4] Sheehan indicated his intention to call Lee but ultimately did not do so, for reasons that were not stated on the record – although the explanation may have been given during a colloquy held off the record. *See* TT 403-407. Fong does not now assert that Sheehan's failure to call Lee or present any other evidence constituted a denial of effective assistance of counsel.

sentenced Fong to an indeterminate prison term of two-and-a-half to five years. ST 16. Fong

also pleaded guilty to six violations of probation arising from his conviction and was sentenced

to one year in prison on each count, to run concurrently with each other and with the sentence

imposed on the charge of promoting prostitution. ST 22-29.

C.    Post-Conviction Proceedings

On direct appeal of his conviction, Fong was represented by new counsel. He challenged

the conviction on the basis that the evidence was legally insufficient to establish all the elements

of the crime of promoting prostitution in the third degree, and that the jury's verdict was against

the weight of the evidence. DE 7 (Declaration [of respondent's counsel Ashlyn Dannelly] in

Opposition to the Petition for a Writ of Habeas Corpus) ("Dannelly Dec.") Ex. A (Fong's brief on

direct appeal) ("App. Br.") at 6, 12. In particular, Fong argued that there was no evidence

supporting the element of the offense that he had managed, supervised, or controlled the

prostitution business, and that the actions Murray described in his testimony showed nothing

more than that Fong was a low-level employee. App. Br. at 6-7. In the absence of proof that

satisfies this managerial element, a defendant who knowingly advances or profits from

prostitution is guilty only of a misdemeanor: promoting prostitution in the fourth degree. N.Y.

Penal Law § 230.20. Fong also argued that Sheehan had been ineffective for failing to raise this

claim. App. Br. at 12-13. The appellate court rejected Fong's argument and affirmed his

conviction:

> The defendant's contention that the evidence was legally insufficient to establish
> that he managed, supervised, or controlled a prostitution business is unpreserved
> for appellate review.... In any event, viewing the evidence in the light most
> favorable to the prosecution, we find that it was legally sufficient to establish the
> defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our

factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence[.]

*People v. Fong*, 803 N.Y.S.2d 436, 436 (App. Div. 2005). The court likewise rejected Fong's claim of ineffective assistance of counsel, writing simply that "[t]he defendant's remaining contention is without merit." *Id.*

Fong, represented by the same counsel that represented him on direct appeal, sought leave to seek further review in the Court of Appeals. In a letter dated November 18, 2005, his counsel noted the denial of Fong's claim about the sufficiency of the evidence but said nothing about the resolution of his ineffectiveness claim; however, counsel did include as exhibits copies of the brief on direct appeal and the court's decision. Dannelly Dec. Ex. D. The court denied the application for leave to appeal on January 31, 2006, stating that "upon the record and proceedings herein, there is no question of law presented which ought to be reviewed[.]" Dannelly Dec. Ex. F (footnote omitted); *see also People v. Fong*, 811 N.Y.S.2d 343 (table) (2006).

On March 20, 2006, Fong filed a motion in the state Supreme Court seeking to vacate his conviction, pursuant to Section 440.10 of the New York Criminal Procedure Law, on the ground that he had been denied the effective assistance of trial counsel. Dannelly Dec. Ex. G ("Motion"). Specifically, Fong criticized Sheehan's failure to argue that the evidence was insufficient to support a conviction, either to the jury as a basis for a verdict of acquittal or to the court as a basis for dismissing the charge. Fong also argued that Sheehan provided ineffective assistance with respect to the jury charge; specifically, Fong contended that Sheehan should have requested instructions both on the definition of the managerial element of the charged felony and on the lesser-included misdemeanor offense. Motion at 4, 6, 9.

On May 10, 2006 the court denied the motion. It explained that "sufficient facts appeared on the record to have raised the issue on direct appeal of his conviction.... Accordingly, defendant's claims are procedurally barred and may not be renewed by way of this motion to vacate his conviction." Dannelly Dec. Ex. I at 3. To the extent the latter decision was premised on an assumption that Fong had *not* raised a claim of ineffective assistance as part of the direct appeal of his conviction, it was clearly incorrect. Nevertheless, Fong did not seek appellate review of the denial of his motion. In seeking to explain this fact, he now writes that "remedies to Court of Appeals were exhausted." Petition at 4.

Fong filed the instant petition on October 16, 2006, using a standardized form that is made available to prisoners in state custody. The *pro se* petition requests relief on the ground "[t]hat [he] had ineffective assistance of Counsel at the trial." Petition at 4. Fong appended to his petition a three-page document entitled "The Cry of Injustice" relating facts about himself and this case and vowing to "lay bare [the prosecutor's] lies and sophistry." *Id*. at 5-7. Fong did not submit a memorandum of law; to the extent I discuss his legal arguments below, I refer to the arguments submitted in his post-conviction proceedings in the state courts.

II.    Discussion

    A.    Procedural Issues

        1.    Timeliness

The petition is timely. When the Court of Appeals denied Fong's application for leave to appeal on January 31, 2006, he had 90 days to seek a writ of certiorari from the United States Supreme Court. He did not do so, and his conviction accordingly became final on May 1, 2006. Fong's motion to vacate, which was already pending when his conviction became final, tolled the

applicable one-year statute of limitations until the state Supreme Court denied the application on

May 10, 2006.  28 U.S.C. § 2244(d)(2).  Fong timely filed the instant petition 159 days later.  *See*

28 U.S.C. § 2244(d)(1)(A); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).

> 2.  Custody

This court has authority to grant habeas relief only to a prisoner who is "in custody[.]"  28

U.S.C. §§ 2241(c)(1)-(3); 2254(a).  When Fong filed the instant petition, he was still

incarcerated.  *See* Petition at 1; DE 1-2 (civil cover sheet).  Within weeks, however, he was

released, apparently on parole.  *See* DE 2 (notice of change of address dated Nov. 9, 2006);

Dannelly Dec. ¶ 1 (noting that as of the date of the declaration, April 27, 2007, Fong was under

parole supervision).  The record does not disclose whether Fong remains under such supervision

as of the date of this report.  Whether he remains on parole or has fully satisfied his sentence,

however, appears irrelevant:  either way Fong appears to satisfy both the statutory requirement of

"custody" and the Article III requirement of a live case or controversy.

> Although the [statutory] language ... suggests that habeas corpus is available only
> to challenge the convictions of prisoners actually in the physical custody of the
> State ... modern cases have extended it to other situations involving challenges to
> state-court decisions.  The first of these cases is *Jones v. Cunningham*, 371 U.S.
> 236 (1963), in which the Court allowed a parolee to challenge his conviction by a
> habeas petition. The Court considered the parolee in "custody" for purposes of
> § 2254(b) because "the custody and control of the Parole Board involve
> significant restraints on petitioner's liberty ... which are in addition to those
> imposed by the State upon the public generally." 371 U.S. at 242 ...  And in
> *Carafas v. LaVallee*, 391 U.S. 234 (1968) ... the Court allowed the writ in a
> challenge to a state-court judgment even though the prisoner, incarcerated at the
> time the writ was filed, had finished serving his sentence during the proceedings.
> The custody requirement had, of course, been met at the time the writ was filed,
> and the case was not moot because Carafas was subject to "'collateral
> consequences'" as a result of his conviction, *id.* at 237 ... and "is suffering, and
> will continue to suffer, serious disabilities ...." *Id.* at 239[.]

*Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 508-09 (1982) (footnotes omitted). Thus, because Fong was in custody when the petition was filed, and presumably remains subject to the collateral consequences of his conviction, *see*, *e.g.*, 18 U.S.C. § 922(g)(1), I conclude that he is entitled to a resolution of his petition regardless of his current parole status.

### 3. Reliance On Arguments Raised In State Court Proceedings

Fong's petition does nothing to explain why he thinks he was deprived of his federal constitutional right to the effective assistance of counsel; it is fair to assume, however, that he intended his petition to encompass any argument he had previously raised and briefed in the state courts. It is "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis in *Triestman* opinion). "Implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Accordingly, I respectfully recommend that the court deem the ineffectiveness arguments that Fong raised in the state court proceedings to be properly presented as part of the instant habeas petition. *See Gardner v. Fisher*, 556 F. Supp. 2d 183, 186 n.1 (E.D.N.Y. 2008) (construing petitioner's claim as a federal constitutional challenge "especially because this exact challenge was previously raised at petitioner's trial and in his state court appeal, where petitioner was represented by counsel"); *Gibson v. Artus*, 2007 WL 542202, at *1 (S.D.N.Y. 2007) (treating petitioner's reference to his *coram nobis* petition as a request to amend his habeas petition to include a new claim); *DeVivo v. Superintendent, Auburn*

*Correctional Facility*, 2006 WL 581145, at *1 (N.D.N.Y. 2006) (considering claims not raised directly when habeas petitioner asked the court to consider "[e]ach and every argument [raised in his] [d]irect [a]ppeal"); *Taplin v. Rabideau*, 2008 WL 2559374, at *1 n.3 (N.D.N.Y. 2008) (treating claims as adequately pleaded when habeas petitioner referenced his appellate claims with the words "please see attached").

    4.    <u>Exhaustion</u>

As a state prisoner seeking federal habeas relief, Fong must show that he properly presented both the factual and legal premises of his claims to the state court. *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). In opposing the petition, the respondent asserts that Fong has not satisfied this requirement because his

> appellate counsel did not alert the Appellate Division to any argument that trial counsel provided ineffective assistance. If petitioner had specifically raised this issue on direct appeal, it could have been addressed at the appropriate time, in conjunction with his direct appeal, without requiring an additional decision by the Supreme Court.

DE 8 (Memorandum in Opposition) at 16. In light of the record in this case, the latter assertion is obviously wrong. Indeed, the same attorney who made that assertion on behalf of the respondent also submitted the evidence that refutes it. *See* Dannelly Dec. Ex. A at 12-13 (setting forth Fong's ineffectiveness claim on direct appeal); Dannelly Dec. Ex. B at 23-26 (setting forth the prosecution's response to the ineffectiveness claim on direct appeal).

The respondent does not argue that Fong's failure to include a reference to the ineffectiveness claim in his counsel's letter seeking further review in the Court of Appeals constitutes a procedural bar to the instant petition – although that omission may reflect nothing more than its failure to acknowledge that Fong raised the issue at all on direct appeal. In any

event, the record reveals that Fong attached a copy of his appellate brief to the letter in which he sought review from the New York Court of Appeals, and that he sufficiently gave that court "a fair opportunity to consider the ... claim and to correct that asserted constitutional defect." *Picard v. Connor*, 404 U.S. 270, 276 (1971); *see* Dannelly Dec. Ex. D. It is of course true that a state prisoner who fails to mention an issue explicitly in his letter seeking leave to appeal can deprive the Court of Appeals of fair notice that he wishes to pursue the issue, and thereby make collateral federal review inappropriate. *See, e.g., Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991); *Brown v. Perlman*, 2008 WL 2009220, at *21-22 (S.D.N.Y. May 8, 2008) (citing cases). But where there is no reason to think that a prisoner has affirmatively misled the Court of Appeals into viewing an issue as having been waived, his attachment of the brief on direct appeal to the letter seeking further review can preserve an issue sufficiently to allow the petitioner to seek relief in a federal habeas petition. *See Galdamez v. Keane*, 394 F.3d 68, 69-77 (2d Cir. 2005); *Jordan v. LeFevre*, 206 F.3d 196, 198-99 (2d Cir. 2000); *Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000); *Bumpus v. Superintendent of Clinton Correctional Facility*, 507 F. Supp. 2d 246, 258-61 (E.D.N.Y. 2007) (citing cases).

The latter rule aptly describes this case. Fong's letter to the Court of Appeals, though it briefly mentioned disposition of one issue on direct appeal, "made no argument in detail," *Jordan*, 206 F.3d at 199, and did not affirmatively direct the court's attention away from the ineffectiveness issue argued in the attached brief. *Galdamez*, 394 F.3d at 76. Moreover, it is apparent that the Court of Appeals did consider the merits of Fong's ineffectiveness claim: it based its decision to deny leave to appeal not just on the letter requesting review, but on "the record and proceedings herein[.]" Dannelly Dec. Ex. F; *see Galdamez*, 394 F.3d at 77-78.

Likewise, Fong's failure to appeal the denial of his motion for collateral review does not raise a procedural bar to review of the instant petition. Once Fong exhausted his attempts to litigate the ineffectiveness claim on direct appeal, he was under no obligation to try again on state collateral review. *Brown v. Allen*, 344 U.S. 443, 447, 448-452, 448 n.3 (1953) (petitioner need not "ask the state for collateral relief, based upon the same evidence and issues already decided by direct review"); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

### 5.    Independent And Adequate State Ground

Fong must also show that the state court actually ruled against him on a matter of federal law; this court lacks jurisdiction to review a state court decision that rests on an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Degrijze v. Artuz*, 134 Fed. Appx. 460, 461 (2d Cir. 2005). An independent and adequate state ground is one that would support the judgment on its own, even if the state court's ruling on the federal claim is found to have been contrary to federal law. A common example is a state procedural rule rendering the claim forfeited under state law. *See Coleman*, 501 U.S. at 730; *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977); *Ulster County Court v. Allen*, 442 U.S. 140, 148 (1979). In determining whether Fong has cleared this procedural hurdle, this court must "presume that there is no independent and adequate state ground for a state court decision" – and that it may therefore be subjected to collateral review here – "when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). But if the opinion contains "a clear and express statement of reliance on a state

procedural bar," this court may not presume that the state court decision rested on the merits of the federal claim. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).

The respondent relies on the fact that the state Supreme Court, when it denied Fong's motion for collateral review, noted that "sufficient facts appeared on the record to have raised the issue on direct appeal of his conviction" and therefore found Fong's motion to be "procedurally barred[.]" Dannelly Dec. Ex. I at 3 (cited in Memorandum in Opposition at 7). In so arguing the respondent distorts the record. Before noting what it (incorrectly) perceived to be a procedural default, the court explicitly wrote that it "view[ed] the defendant's [ineffectiveness] claims as unpersuasive and without merit." *Id.* Thus the court based its decision primarily on an analysis of the merits of a federal constitutional claim, and secondarily on a demonstrably incorrect procedural analysis.[5] Under such circumstances, this court should not view Fong's ineffectiveness claim as procedurally barred.

6.    Standard Of Review

A federal court may grant habeas relief on a claim that was decided by the state court on the merits only if it concludes that the adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it applies a legal rule that contradicts a rule set out in governing Supreme Court cases, or if it addresses a set of facts that are materially indistinguishable from those in a Supreme Court case and reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court

---

[5] Moreover, two higher state courts did review and reject Fong's ineffectiveness claims on the merits, as part of the direct appeal proceedings.

decision is an "unreasonable application" of Supreme Court precedent if it identifies the correct

legal rule but unreasonably applies it to the facts of a particular case, or if it unreasonably extends

or refuses to extend a Supreme Court precedent. *Id.* at 407. The decision must be "so plainly

unconstitutional that it was objectively unreasonable" for the state court to conclude as it did.

*Jimenez*, 458 F.3d at 147 (citing *Williams*, 529 U.S. at 409-10, 412).

      B.    <u>Ineffective Assistance</u>

      Construing the petition liberally, it appears that Fong has four separate complaints about

Sheehan's performance – but it is equally clear that they all arise from the same source: Fong's

contention that the evidence did not suffice to establish that he "manag[ed], supervis[ed], [or]

controll[ed] ... a prostitution business ... involving prostitution activity by two or more

prostitutes[.]" N.Y. Penal Law § 230.25[1]. Because Fong is convinced that the evidence was

not sufficient in this regard, he asserts that his trial counsel should have argued the point to the

jury to secure an acquittal, made a motion to the trial court to dismiss on sufficiency grounds (or,

failing that, to vacate the guilty verdict as being against the weight of the evidence), and sought

jury instructions defining the element at issue and also giving a lesser included misdemeanor

charge that did not require proof of that element. *See* App. Br. at 12-13; Motion at 4, 6, 9.[6]

---

[6] Fong did not raise the ineffectiveness theory relating to the jury instructions on direct appeal,
but instead argued for the first time in his collateral motion to vacate the conviction. Having
failed to appeal the denial of that motion, this portion of Fong's claim, unlike the others, is
arguably not available for review because Fong did not exhaust his opportunities to secure relief
in the state courts. In an abundance of caution, I nevertheless respectfully recommend that the
court review the substance of this portion of Fong's claim. As explained below, I conclude that it
lacks merit for the same reason as the other claims: Sheehan's performance was objectively
reasonable, and there is no reasonable probability that the failure Fong decries was prejudicial.

In order to prevail on this ineffectiveness claim, Fong must satisfy both prongs of the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that Sheehan's representation "fell below an objective standard of reasonableness." *Id*. at 688. Second, Fong must demonstrate that he was actually prejudiced by Sheehan's failure. This requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 687, 694. Constitutionally effective counsel includes a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

In general, Sheehan functioned actively and competently as an attorney throughout the proceedings. He made two successful motions that prevented the government from introducing evidence of prior convictions in its case-in-chief, and he similarly succeeded in precluding cross-examination of his client about many prior prostitution-related convictions in the event Fong wished to testify. He also conducted cross-examinations of the prosecution's two witnesses that effectively established the details that each was unable to remember and that highlighted, in the case of witness Murray, the extent to which he attributed specific statements to Fong and others that Murray could not in fact recall verbatim. While Sheehan's performance is undoubtedly subject to some valid criticism,[7] in general it appears to have been competent.

---

[7] For example, although Sheehan did not make a motion to dismiss on insufficiency grounds on the theory that Fong now advances, he did make an insufficiency motion predicated on Murray's admission that his testimony regarding his conversations with Fong and Lee represented a "synopsis," rather than a word-for-word recollection of what was said. Such a motion does not appear to have been based on any legal authority and was manifestly meritless. However,

16

Because all of the errors that Fong attributes to his trial counsel arise from the his view about the quality of the proof on the managerial element of the charged felony offense, I discuss all of those errors together against the framework of the *Strickland* test. First, none of the omissions about which Fong complains was objectively unreasonable. A reasonably competent attorney representing Fong would have known that proof of the defendant's managerial, supervisory, or controlling role in the prostitution business at issue was an essential element of the crime – but such an attorney would also have reason to believe that the evidence sufficed to satisfy that element.[8] Second, because the evidence did suffice to satisfy the managerial element of the felony offense, none of Sheehan's purported errors could have prejudiced Fong.

---

making an ill-conceived and unsuccessful motion is neither objectively unreasonable nor inherently prejudicial. In assessing Sheehan's overall performance in the context of this case, I also take notice of the fact that Sheehan was found guilty of unrelated professional misconduct on August 15, 2005, and subsequently disbarred. *See In re Sheehan*, 808 N.Y.S.2d 556 (App. Div. 2006) (per curiam). However, the fact that Sheehan seriously violated professional norms in unrelated proceedings obviously says nothing about whether his performance in representing Fong met the constitutional standard of effectiveness.

[8] It is of course possible that Sheehan did not take any of the steps Fong now identifies through ignorance of the law rather than as the result of a competent assessment of the facts and the applicable law. If that were the case, Fong might be able to satisfy the performance prong of the *Strickland* test. *See Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005) (per curiam); *Noble v. Kelly*, 89 F. Supp. 2d 443, 463 (S.D.N.Y. 2000) ("Errors caused by counsel's ignorance of the law are errors that run afoul of the objective standard of reasonableness.") (citing *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)). If resolving that question were critical to a fair resolution of Fong's petition, I would attempt to convene a hearing to afford Sheehan – if he could still be located – an opportunity to explain his failure to take issue with the quantum of proof on the managerial element of the offense. *See Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam) ("a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs"). I did not convene a *Sparman* hearing in this case, however, because as explained below, I conclude that the court can and should deny the petition even if it assumes that Sheehan's performance was unreasonable.

To be sure, there are cases in which convictions for the felony offense of which Fong was convicted were reversed for failure to establish the managerial element of the offense. But in such cases, the evidence tended to demonstrate nothing more than that the defendant on trial was a low-level functionary in the prostitution business at issue. *See, e.g.*, *People v. Land*, 780 N.Y.S.2d 379, 380 (App. Div. 2004) (uncontroverted testimony that defendant was merely a security guard); *People v. Davilla*, 488 N.Y.S.2d 2, 2-3 (App. Div. 1985) (evidence that defendant had brought customer to a house of prostitution and asked for a portion of the proceeds only established that defendant was a "steerer" and was insufficient to establish the managerial element required by the statute; felony conviction reduced to misdemeanor); *People v. Rodriguez*, 480 N.Y.S.2d 214, 215 (App. Div. 1984) (absence of proof that the defendant "personally discussed price with anyone, that he owned or leased the premises, or that keys or money were recovered from him" supported a reasonable view that the evidence did not establish managerial element); *People v. Mejia Real Estate, Inc.*, 672 N.Y.S.2d 645, 648 (Sup. Ct. 1998) (merely providing premises for prostitution insufficient, reducing conviction to misdemeanor).

In contrast, the evidence that Fong managed, supervised, or controlled the prostitution business at issue in this case was quite strong. Murray's testimony provided direct evidence that Fong personally discussed with a client the price he would have to pay for a prostitute's services, personally received a substantial part of that price (and was found to have money in his possession that Lee had described as being the portion of her fee that had to go to the "house"), personally summoned the prostitutes, controlled access to the premises at which the prostitution activity occurred, and scolded Detective Murray as "bad, very bad" when Murray opened the gate to let other officers in to conduct a raid. These activities, indicating management, supervision,

and control, are the type of "escalating factors" that mark the difference between the third and fourth degree offense. *Mejia*, 672 N.Y.S.2d at 648, *see also People v. Freany*, 488 N.Y.S.2d 759, 761-62 (App. Div. 1985) (evidence that defendant owned establishment where the prostitution took place, was to collect money for the services of prostitutes, and procured the prostitutes for customers a sufficient basis for a conviction); *Rodriguez*, 480 N.Y.S.2d at 215 (personal discussion of price or receipt of money would each have been evidence of management, supervision, or control). Given this evidence, the jury was plainly entitled to find that Fong managed, supervised, or controlled the prostitution business that Murray investigated.

As a result, it was not objectively unreasonable for Sheehan to shun any argument that the evidence supporting the managerial element was insufficient, and the contrary decision would not have been likely to change the outcome. Had he made such an argument to the jurors he would have risked losing credibility and would in any event most likely have failed to persuade them, in light of the strength of the evidence and the absence of any other explanation of Fong's actions supported by any facts in the record. Had he made such an argument as the basis of a motion to dismiss, it would have unquestionably have failed because, "on the basis of the evidence at trial" there was a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion" that Fong was guilty of the third degree offense. *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). Had Sheehan made a motion to overturn the verdict as against the weight of the evidence, it similarly would have failed because, although a different finding "would not have been unreasonable," "weigh[ing] the ... probative force" of the testimony and the inferences that may be drawn from it, it appears that the jury "g[a]ve the evidence the weight it should be accorded." *Id.* (citing *People ex rel. MacCracken v. Miller*, 291 NY 55, 62

19

(1943)).  Had Sheehan asked the court to instruct the jury on the definition of the managerial element, he would only have served to highlight the fact that the evidence supported a finding that the element had been proved beyond a reasonable doubt.

Only slightly closer is the question of whether the failure to request a lesser-included-offense instruction was unreasonable and prejudicial.  To be sure, if Sheehan *had* requested such a charge in an effort to secure a compromise verdict on the misdemeanor offense, the trial court would have been obliged to give it.  Such a request must be granted where there is a "reasonable view of the evidence that would support a finding that the defendant committed such lesser offense but did not commit the greater."  N.Y. Crim. Pro. L. § 300.50; *People v. Scarborough*, 49 N.Y.2d 364, 368 (1980).  The fact that Sheehan *could* successfully have requested such an instruction, however, does not mean that he *should* have done so or that it was objectively unreasonable for him to have done otherwise.

The choice Sheehan had to make is the kind of judgment call that is virtually unreviewable under *Strickland*:  whether to pursue a complete acquittal by forcing the jury to choose between a conviction on the most serious offense and none at all, or instead to offer the jury the possibility of compromising by convicting the defendant on a less serious charge.  The two can be mutually exclusive:  a strategy geared to securing a complete acquittal "practically precludes a request for an instruction on a lesser included offense."  *Rios v. United States*, 1992 WL 328931, at *6 (E.D.N.Y. Oct. 13, 1992) (citing *Woratzeck v. Ricketts*, 820 F.2d 1450 (9th Cir. 1987); *United States v. Debango*, 780 F.2d 81 (D.C. Cir. 1986); *Colon v. Smith*, 723 F. Supp. 1003 (S.D.N.Y. 1989)).  As a result, "[t]he tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference."  *Id*. at *7 (citing

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *United States v. DiTommaso*, 817 F.2d 201 (2d Cir. 1987)). The choice to forego an instruction on the lesser included misdemeanor offense was therefore not unreasonable. Moreover, in light of the strength of the evidence on the managerial element, it seems unlikely that the outcome of Fong's trial would have been any different if the instruction had been given.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court deny Micky Fong's petition for a writ of habeas corpus.

IV.    Objections

I direct the respondent to serve a copy of this Report and Recommendation on the petitioner by certified mail, and to file proof of service with the court no later than January 21, 2009. Any objections to this Report and Recommendation must be filed no later than February 4, 2009. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated:  Brooklyn, New York
        January 14, 2009

                                        /s/ James Orenstein
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge